**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

**JAMES S.,**

                                        **Plaintiff,**

          **vs.**                                          **5:21-cv-747**
                                                           **(MAD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

───────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

**OLINSKY LAW GROUP**                      **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **NATASHA OELTJEN, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for the Commissioner

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

          On August 7, 2018, Plaintiff filed an application for Title II Disability Insurance Benefits

and for Title XVI Supplemental Security Income, alleging a disability onset date of August 26,

2013, due to major depressive disorder, anxiety disorder, chronic low back pain, topaceous gout,

hypothyroidism, and hypertension. *See* Administrative Transcript ("Tr.") at 119. After his

application was initially denied, he requested a hearing before an Administrative Law Judge

("ALJ"). *See id.* at 110-11, 127-28. In April 2020, the ALJ held a telephone hearing at which

Plaintiff, who was represented by counsel, and an impartial vocational expert testified. *See id.* at 34-62. On May 6, 2020, the ALJ issued a decision denying Plaintiff's claim. *See id.* at 7-21.

The ALJ considered Plaintiff's claim as of October 7, 2016,[1] and concluded, following the Commissioner's sequential disability evaluation, that Plaintiff was not disabled. *See id.* at 15-16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *See id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; gout; Dupuytren's contracture of the left ring finger; osteoarthritis of the right thumb; osteoarthritis of both feet; depression; anxiety; post-traumatic stress disorder ("PTSD"); and alcohol and cannabis dependence. *See id.* at 13. At step three, the ALJ found that none of Plaintiff's impairments met or equaled the requirements of any listing. *See id.* at 13-14. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with additional limitations, including the ability to frequently but not constantly handle and finger with both hands, and to perform simple, routing tasks in work where social interaction is not a primary job function, but he can occasionally interact with coworkers. *See id.* at 14. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *See id.* at 19-20. Finally, at step five, the ALJ found Plaintiff was not disabled because he could perform other jobs existing in significant numbers in the national economy. *See id.* at 20-21. Specifically, relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform the representative occupations of a press operator, plastic mold tender, and inspector hand packer. *See id.* On April 26, 2021, the Appeals Council denied Plaintiff's request

---

[1] Although Plaintiff alleged a 2013 onset date, the ALJ considered the claim only as of October 7, 2016, because another ALJ had denied a previous claim the day before. The ALJ determined that *res judicata* applied to the previously-adjudicated period, *see* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1), and Plaintiff had not attempted to reopen the prior claim. *See* Tr. at 10.

for review, making the ALJ's decision the Commissioner's final decision subject to judicial review.  *See id.* at 1-3.

On July 1, 2017, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of the Commissioner's decision.  *See* Dkt. No. 1.  In his motion for judgment on the pleadings, Plaintiff contends that the ALJ disregarded his own finding of Plaintiff's moderate mental limitation in concentration, persistence, and pace in the RFC determination.  *See* Dkt. No. 12 at 11-15.  Further, Plaintiff argues that the ALJ failed to properly assess the effects of his non-exertional and exertional impairments and incorporate them into the RFC determination.  *See id.* at 15-20.

As set forth below, Plaintiff's motion for judgment on the pleadings is denied and the final decision of the Commissioner is affirmed.

## II. DISCUSSION

### A.    Standard of Review

#### *1. Substantial Evidence*

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *See Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its

weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L. Ed. 456 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See id.* Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld — even if the court's independent review of the evidence may differ from the Commissioner's. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *see also Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted). However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### 2. Disability Determination — The Five-Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ must determine whether the claimant engaged in substantial gainful activity during the relevant period.  A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits.  *See id.* §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *See id.* §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  *See id.* §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether, despite the claimant's severe impairment, he or she has the residual functional capacity ("RFC") to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).  The burden of proof with regard to these first four steps is on the claimant.  *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner for step five.  *See Perez*, 77 F.3d at 46 (citing *Carroll*, 705

F.2d at 642).  This step requires the ALJ to examine whether the claimant can do any type of

work.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a

claimant's age, physical ability, education, and previous work experience should be evaluated to

determine whether a claimant retains the RFC to perform work in any of five categories of jobs:

very heavy, heavy, medium, light, and sedentary.  *See Perez*, 77 F.3d at 46 (citing 20 C.F.R. §

404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national

economy that the claimant can do; he need not provide additional evidence of the claimant's

residual functional capacity."  *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### 3. RFC Determination

Pursuant to Social Security Ruling ("SSR") 96-8p, an "RFC is an assessment of an

individual's ability to do sustained work-related physical and mental activities in a work setting

on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5

days a week, or an equivalent work schedule."  SSR 96-8p.  Additionally, an RFC "does not

represent the least an individual can do despite his or her limitations or restrictions, but the most."

*Id.*; *see also* 20 C.F.R. § 416.945(a)(1).  In order to determine an RFC, the adjudicator is

instructed to base the assessment on "all of the relevant medical and other evidence."  20 C.F.R. §

416.945(a)(3).

Regulations of the Social Security Administration ("SSA") set forth the proper

considerations to be used in evaluating medical opinion evidence to establish a claimant's RFC.

*See* 20 C.F.R. § 416.927.  The Regulations provided that, generally, "we give more weight to the

opinion of a source who has examined you than the opinion of a source who has not examined

you." 20 C.F.R. § 416.927(c)(1).  In order to determine what weight to assign the opinion, the

ALJ must consider the following factors: length, nature, and extent of the treating relationship;

supportability of the opinion; consistency of the opinion with other evidence in the record; the specialization of the source; and any other factors that support or contradict the opinion. *See id.* § 416.927(c)(2)-(6).

**B.    Application**

### 1. The ALJ Properly Accounted for the Moderate Limitation in Concentration, Persistence, and Pace in the RFC

Initially, Plaintiff contends that the ALJ disregarded his own finding of moderate mental limitation in concentration, persistence, and pace in the RFC determination. *See* Dkt. No. 12 at 11-15. In response, the Commissioner argues that, in consideration of Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace, the ALJ limited Plaintiff to simple, routine tasks in work where social interaction is not a primary job function. *See* Dkt. No. 15 at 5, 8-13. The Commissioner contends that the ALJ's RFC assessment was based on a reasoned evaluation of the medical evidence from the relevant period, all opinion evidence, Plaintiff's treatment history, and his testimony. *See id.*

As the ALJ noted, the record demonstrates a substantial overlap in symptomology between Plaintiff's different mental conditions, variously diagnosed as depression, anxiety, and PTSD, as well as a history of alcohol and cannabis use disorders. *See* Tr. at 17. Plaintiff attended a therapy visit in March 2018, reporting that he continued to experience symptoms of anxiety around other people and in public places. *See id.* at 309. A mental status examination showed an anxious but attentive attitude, appropriate mood, normal speech, coherent and logical thought process, good cognitive functioning and concentration, fair-to-poor insight, fair judgment, and good attention. *See id.* at 309-10. Plaintiff's therapist noted that his progress had generally been slow, but he had recently begun to make steady, more meaningful progress, and was better at controlling his impulsivity and anger. *See id.* at 313.

7

A June 2018 treatment plan update indicated that Plaintiff had "generally been managing," with some ups and downs in symptoms. *See id.* at 331. He was noted to sometimes lack motivation, but to be showing greater awareness/insight into how his anxiety impacted him and increased his depression, and he continued to be more effective at controlling impulses. *See id.* In August 2018, Plaintiff was noted to be stable on his current medications with no adverse effects. *See id.* at 319. He described a good mood until the last few weeks. *See id.* Mental status examination noted a circumstantial and vague thought process, with fair concentration, insight, judgment, and attention, and appropriate but guarded behavior. *See id.* at 320.

As the ALJ discussed, Plaintiff attended a consultative examination with Corey Anne Grassl, Psy.D. in October 2018. *See* Tr. at 463. He reported normal sleep and a fluctuating appetite, as well as depression symptoms including sadness, guilt, loss of interest, and social withdrawal, but denied suicidal or homicidal ideology and any anxiety-related symptomatology. *See id.* Upon examination, his thought processes were coherent and goal oriented, with a full effect, euthymic mood, normal orientation, intact attention and concentration, intact recent and remote memory, average cognitive functioning, and fair insight and judgment. *See id.* at 464-65. Plaintiff explained that he could dress, bathe, and groom himself, do laundry, shop, cook and prepare food, and manage money. *See id.* at 465. Cleaning could be a struggle, but he was able to do it without help. *See id.* Plaintiff reported that he could drive and take the bus, socialize with friends, was close to his grandchildren, and enjoyed a golf video game. *See id.* Dr. Grassl opined that Plaintiff was moderately limited in his ability to sustain concentration, perform at a consistent pace, sustain a regular routine and attendance, regulate emotions, control behavior, and maintain well-being, but would have no limitations in other areas. *See id.* at 465-66.

Plaintiff continued to receive updates to his treatment plan with his therapist every two-to-three months through much of 2019 and into 2020.  In January 2019, Plaintiff reported that he was doing "quite well" and loved his new apartment, though he sometimes felt depressed and lonely.  *See id.* at 583.  That April, Plaintiff was described as "generally stable" with some depression, but he continued to be less impulsive/reactive.  *See id.* at 567.  In June 2019, Plaintiff noted ongoing depression due to a family situation, but indicated he was happy he would be able to see his grandchildren more often.  *See id.* at 571.  He was described as medication compliant and reported generally improving relations with others despite a recent interaction with a friend that did not go well.  *See id.*  That September, Plaintiff reported a slight decrease in depression/anxiety and less impulsivity.  *See id.* at 575.  In December 2019, Plaintiff described "ups and downs" with not much change overall, but felt he was more effective in curtailing impulsivity and more motivated for addressing his health issues.  *See id.* at 579.  In February 2020, Plaintiff again reported some ups and downs but noted he was able to make and keep medical appointments and was generally taking better care of his health.  *See id.* at 587.  He noted mild depression with occasional spikes of moderate-to-severe anxiety.  *See id.*

Initially, the Court notes that Plaintiff has not challenged the ALJ's findings that his collective mental health impairments resulted in moderate limitations in concentration, persistence, and pace (of the ALJ's assessment of the other three areas of mental functioning).  As such, he has waived any challenge to this assessment.  *See Snyder v. Colvin*, No. 16-cv-46, 2017 WL 61946, *6 n.1 (N.D.N.Y. Jan. 5, 2017).  Rather, his argument is limited to asserting that the ALJ "disregarded" the finding of moderate limitations in concentration, persistence, and pace in the RFC determination.  *See* Dkt. No. 12 at 11-15.  As the Commissioner correctly notes,

however, the plain language of the ALJ's decision, as well as the objective and opinion evidence of record, does not support this argument.

After thoroughly discussing the objective evidence pertaining to Plaintiff's mental functioning, the ALJ concluded that the moderate limitations in concentration, persistence, and pace, as well as interacting with others, were accounted for by an RFC for simple, routine tasks in work where social interaction is not a primary function. *See* Tr. at 17. The ALJ further limited Plaintiff to occasional interaction with coworkers, and no interaction with the public in the performance of job duties. *See id.* at 14. The ALJ considered Plaintiff's report that he did not need reminders to perform tasks of personal care, could follow instructions well, performed numerous household chores without difficulty, and could prepare simple meals, shop in stores, manage his finances, and occasionally watch his grandchildren. *See id.* at 14, 278-84. The ALJ further explained that Plaintiff's overall mental health treatment regimen was conservative and static, and noted that there was no evidence of significant exacerbations when Plaintiff was compliant with his prescribed medications. *See id.* at 17.

The ALJ further acknowledged that Plaintiff occasionally reported increases in depression and anxiety (with associated symptoms including social withdrawal, fluctuating moods, increased stress, and irritability), but found that mental status examinations throughout the relevant period reflected largely normal findings. *See id.* These findings included, in particular, normal concentration – as well as normal mood and effect, normal thought content, normal cognitive and intellectual functioning, and good insight and judgment. *See id.* at 17, 304-05, 310, 316, 318, 320, 334-35, 344-45, 353, 366, 399, 405, 410, 416, 421, 426, 431, 444, 449, 455. Moreover, the consultative examiner, Dr. Grassl, observed normal attention, concentration, and memory, further noting Plaintiff denied anxiety-related symptomatology, panic attacks, suicidal ideation, or any

symptoms of formal thought disorder.  *See id.* at 17, 463-65.  Dr. Grassl opined that Plaintiff was

moderately limited in his ability to sustain concentration and perform a task at a consistent pace,

and that his psychiatric problems did not appear significant enough to interfere with his ability to

function on a daily basis.  *See id.*  The ALJ found this opinion somewhat persuasive, as it was

generally consistent with and supported by the objective evidence.  *See id.* at 18.

Collectively, the record demonstrates "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion" that Plaintiff could perform simple, routine tasks.  *See*

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Nonetheless, Plaintiff contends that the ALJ

failed to incorporate the moderate limitations found at step two into the RFC.  *See* Dkt. No. 12 at

12.  Plaintiff, however, has failed to explain what greater limitations the ALJ should have

assessed, much less how the record supports such limitations.  In fact, he simply asserts that the

record "corroborates that severe mental impairment(s) warranted appropriate limitation in

maintaining attention and concentration for performing work-related tasks," but fails to articulate

what an "appropriate" limitation would be or explain why the assessed limitations would not meet

this standard.  *See id.* at 15.  Plaintiff's argument is little more than a conclusory allegation, and

the Court declines to speculate about what other limitations the ALJ might have included.  *See*

*Stacy D. v. Comm'r of Soc. Sec.*, No. 19-cv-228S, 2021 WL 1975399, *4 n.4 (W.D.N.Y. May 18,

2021).

Additionally, the Court finds that the ALJ's RFC assessment was not inherently deficient.

There is no requirement that an ALJ use the same language from step two or three in the RFC

analysis, so the absence of words "concentration, persistence, or pace" in the RFC assessment is

not *per se* error.  *See Peryea v. Comm'r of Soc. Sec.*, No. 13-cv-173, 2014 WL 4105296, *10

(N.D.N.Y. Aug. 20, 2014); *see also Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010).

Additionally, "courts have routinely held that individuals suffering from 'moderate' difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform 'simple, routine and repetitive tasks.'" *Worthy v. Berryhill*, No. 15-cv-1762, 2017 WL 1138128, *7 (D. Conn. Mar. 27, 2017) (citing *Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, *4 (N.D.N.Y. Sept. 30, 2014); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013)).

In *Bartell*, the court concluded that the RFC restriction to "simple, repetitive work" was consistent with the ALJ's assessment of moderate difficulties in concentration, persistence, and pace, as well as an opinion indicating that despite such moderate limitations the plaintiff could perform basic activities of unskilled work. *See Bartell*, 2014 WL 4966149, at *4. So too here. The ALJ properly considered Plaintiff's treatment notes and the assessment of Dr. Grassl to conclude that, based on the overall record, moderate limitations in concentration, persistence, and pace were accounted for by the limitation to simple, routine tasks. *See* Tr. at 17. As the Commissioner correctly notes, the Second Circuit has consistently held that moderate limitations do not prohibit a claimant from performing unskilled work. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

Additionally, an ALJ need not incorporate limitations specific to concentration, persistence, and pace where the medical evidence demonstrates that the claimant can engage in simple tasks, or where the RFC implicitly accounts for the claimant's actual limitations. *See Richard H. v. Saul*, No. 19-cv-128, 2020 WL 467734, *9 (N.D.N.Y. Jan. 29, 2020) (holding that the ALJ adequately demonstrated that she considered evidence showing moderate limitations in concentration and persistence and incorporated them into the RFC by limiting the claimant to "simple, routine, and repetitive non-complex tasks"). Accordingly, Plaintiff has failed to show

that his moderate mental limitations are not accounted for by the RFC.  *See Smith v. Berryhill*,

740 Fed. Appx. 721, 726 (2d Cir. 2018) (noting that the plaintiff has the burden to prove a more

restrictive RFC is warranted).

The Court further finds that the remainder of Plaintiff's argument must also fail, since it is

entirely contingent on the premise that the RFC is faulty.  For example, Plaintiff suggests that the

hypothetical presented to the vocational expert did not account for moderate limitations in

concentrating, persistence, and maintaining pace, and therefore did not account for all of his

impairments.  *See* Dkt. No. 12 at 13-14.  As the Commissioner correctly notes, this argument is

simply repackaging Plaintiff's initial argument in a different context and the hearing transcript

demonstrates that the ALJ properly presented the hypothetical he ultimately adopted as the RFC.

*See* Tr. at 14, 56-58.  Because Plaintiff has not shown error in the RFC assessment, he necessarily

has not shown error in the corresponding hypothetical presented to the vocational expert.  *See*

*Smith*, 740 Fed. Appx. at 726-27 ("The Commissioner's burden at step five is to show the

existence of possible employment for an individual with the RFC determined by the ALJ in the

fourth step of the sequential analysis. ... It was therefore proper for the vocational expert to

respond to hypotheticals premised on the ALJ's RFC").

In short, the ALJ's RFC decision properly considered Plaintiff's moderate limitations in

concentrating, persisting, and maintaining pace in determining that Plaintiff should be limited to

simple, routine tasks in work where social interaction is not a primary job function.

### 2. The Physical RFC is Supported by Substantial Evidence

Plaintiff contends that the ALJ failed to properly assess the effects of his non-exertional

and exertional impairments and incorporate them into the RFC determination.  *See* Dkt. No. 12 at

15-19.  Plaintiff claims that the ALJ improperly concluded that he is able to stand and/or walk for

six hours in a workday and further improperly concluded that he is able to frequently but not

constantly handle and finger with both hands. *See id.* The Court disagrees.

Initially, the Court notes that the ALJ found that Plaintiff retained the physical RFC for

light work, with additional postural limitations as well as the ability to "frequently, but not

constantly handle and finger with both hands." Tr. at 14. As with the mental RFC, the ALJ

evaluated the medical evidence from the relevant period, all opinion evidence, Plaintiff's

treatment history, and his testimony in assessing the physical RFC. *See* 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1). The ALJ noted that Plaintiff had a history of degenerative disc

disease, gout, Dupuytren's contracture[2] of the left ring finger, and osteoarthritis in the right thumb

and both feet. *See* Tr. at 15. The ALJ recognized that treatment records demonstrated some

abnormal findings, including tenderness to palpation in the lumbar spine, tenderness in the right

hand, slightly reduced extension in the left ring finger, antalgic gait, and some swelling or

tenderness in the metatarsophalangeal joints in both feet. *See id.* at 16 (citing Tr. at 392, 394,

416, 434, 439, 554, 563, 593). However, based on the prior administrative medical finding of Dr.

K. Waldman, the findings of consultative examiner Dr. Kalyani Ganesh, numerous treatment

notes showing mostly normal findings, and Plaintiff's own testimony, the ALJ concluded that the

light RFC with additional postural and manipulative limitations was sufficient to account for

Plaintiff's physical impairments, which is supported by substantial evidence. *See id.* at 16-19.

As the ALJ noted, various x-rays during the relevant period showed normal findings or

only mild to moderate abnormalities. *See id.* at 15. Plaintiff underwent surgery on the lumbar

spine in May 2016 and an x-ray from October 2018 showed moderate degenerative changes at the

---

[2] According to the Mayo Clinic, Dupuytren's contracture is a hand deformity that affects a layer of tissue under the skin of the palm, which eventually creates a thick cord that can pull one or more fingers into a bent position.

L5-S1 level, where the surgery took place.  *See id.* at 363-64, 472.  The remainder of the disc spaces were well maintained, with normal lumbar lordosis.  *See id.* at 472.  An x-ray of the feet in September 2018 showed mild bilateral osteoarthritis of the first metatarsophalangeal joint of both feet, but otherwise normal findings.  *See id.* at 491.  An x-ray of the right hand in July 2019 showed some mild arthritis of the metacarpophalangeal ("MCP") joint of the thumb.  *See id.* at 561.

The ALJ further relied in part on the prior administrative medical finding of Dr. K. Waldman, which he found mostly persuasive.  *See id.* at 19.  Dr. Waldman opined that Plaintiff could perform light work with occasional postural limitations, which the ALJ determined was consistent with the mostly normal physical examination findings in the record.  *See id.* at 19, 103-04.  The ALJ further found that, in addition to the postural limitations posited by Dr. Waldman, the physical RFC should also provide for manipulative limitations, as discussed in more detail below.  To a lesser extent, the ALJ also relied on the October 2018 examination and opinion of consultative examiner Dr. Ganesh, which he found somewhat persuasive because it was overall consistent with the record.  *See id.* at 18.  Plaintiff informed Dr. Ganesh that his gout medication was helping, and that he experienced aching pain in the toes due to arthritis, but the medication Meloxicam helped.  *See id.* at 468.  Plaintiff indicated that he is able to cook, shower, and dress himself.  *See id.* at 469.  He appeared in no acute distress and with a normal gait and stance, but could not heel/toe walk, and squat was fifty percent of normal.  *See id.*  A musculoskeletal examination showed some limitation in flexion and extension of the cervical spine, and full range of motion in both arms and legs.  *See id.* at 470.  There were no sensory deficits in the arms or legs, strength was normal, and hand and finger dexterity were intact for both hands with 5/5 grip strength.  *See id.*  Dr. Ganesh opined Plaintiff would have no limitations in sitting, standing, or

walking, and moderate limitations in lifting, carrying, and pulling. *See id.* The ALJ agreed, but noted that the assessment was "rather vague," and that additional evidence supported more specific and restrictive limits. *See id.* at 18.

The ALJ then explained how he accounted for the remaining objective evidence in the RFC. During several treatment visits in 2016 and 2017, Plaintiff reported significant pain in his feet associated with gout and showed some tenderness and redness during physical examinations. *See* Tr. at 403, 412, 418, 423. In April 2018, Plaintiff reported continuing gout flares, but noted that prednisone was helpful in treating them. *See id.* at 399. Physical examination showed a normal gait, with no warmth or swelling noted in the right foot, and he was able to extend his right leg fully despite mild tenderness. *See id.* In August 2018, Plaintiff noted that he was able to alleviate gout pain with cold water and ice packs, and there was no erythema or swelling on examination. *See id.* at 392-94. By December 2018, Plaintiff noted that he had not had any gout flares since starting the medication Allopurinol, though he continued to experience some foot pain associated with arthritis. *See id.* at 548. Gait and station were again normal, and Plaintiff's treatment provider indicated he would not fill out his disability paperwork if Plaintiff did not schedule and attend a podiatry appointment. *See id.* at 550. On January 30, 2020, Plaintiff was examined by a podiatrist, Dr. Freddie Edelman, who noted hallux valgus in both feet and an antalgic gait. *See id.* at 593-94. The following month, an ultrasound of the feet showed mild lipping and spurring, and Dr. Edelman indicated that Plaintiff's requires appropriate shoe gear and custom orthotics. *See id.* at 592.

The record also showed normal or only mild abnormal findings in Plaintiff's hands. As noted above, a July 2019 x-ray of the right hand showed mild arthritis of the MCP joint. *See id.* at 561. During a treatment visit that same day, Plaintiff reported occasional pain when

16

grasping things, but denying any numbness or tingling in the right hand. *See id.* at 562. Examination of both hands showed full range of motion of both wrists and hands. *See id.* at 563. Sensation to light touch was also intact in both hands. *See id.* The left ring finger lacked "just a bit of extension" and there was a palpable cord down to the palm. *See id.* During a January 2020 treatment visit, Plaintiff's physician noted that he had opted against surgery for the Dupuytren's contracture, and that his right thumb was "feel[ing] great" after an injection he received during the previous visit. *See id.* at 559. The contracture in the left hand, meanwhile, had increased. *See id.* Physical examination showed a thirty-degree joint contracture with tenderness in the left ring finger, with no additional cords found. *See id.* at 560. Plaintiff indicated that he wanted to move forward with a Dupuytren's excision procedure. *See id.* At the hearing, Plaintiff testified that the surgery was scheduled for June 2020. *See id.* at 42.

In determining Plaintiff's physical RFC, the ALJ recognized and accounted for the ongoing limitations in Plaintiff's feet and hands by limiting him to light work with additional postural limitations, and further restricting him to frequent handling and fingering with both hands. *See* Tr. at 14; *see also* SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983) (providing that "frequently" means "occurring from one-third to two-thirds of the time"). Plaintiff's arguments challenging the RFC largely amount to a request to re-weigh the evidence and reach a different conclusion, which is improper where the ALJ's determination is supported by substantial evidence, as is the case in the present matter. *See Walsh o/b/o S.J.W. v. Comm'r of Soc. Sec.*, No. 16-cv-1413, 2018 WL 1229827, *5 (N.D.N.Y. Mar. 9, 2018) ("It is not the function of this Court to re-weigh evidence on appeal from a decision of the Commissioner, but rather to determine whether substantial evidence supports the Commissioner's decision").

Plaintiff specifically challenges the ALJ's assessment of his foot condition, alleging that the ALJ "disregarded" his need for injections and custom orthotics, and the effect of these treatments on his ability to perform light work. *See* Dkt. No. 12 at 16-17. However, the ALJ recognized the presence of osteoarthritis in Plaintiff's feet, but noted that x-rays showed mild findings, and that Plaintiff often demonstrated normal gait and station, and showed no limitations in strength or range of motion in the lower extremities. *See* Tr. at 15-16, 353, 366-67, 394, 399, 405, 410, 416, 434, 470, 491, 536, 549, 554, 563.

Moreover, contrary to Plaintiff's assertion, the ALJ was under no obligation to present the need to use custom orthotics (which would presumably improve, or at least not worsen, any foot pain or discomfort) in a hypothetical to the vocational expert. There is no evidence to demonstrate that the mere suggestion to use orthotic inserts undermines the ability to perform light work, and Plaintiff has pointed to no authority to that effect. *See Calabrese v. Astrue*, 358 Fed. Appx. 274, 277 (2d Cir. 2009) (holding that "a hypothetical 'need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments'").

The Court also finds unpersuasive Plaintiff's argument that the ALJ failed to properly evaluate his hand conditions. *See* Dkt. No. 12 at 17. Plaintiff contends that the limitation to frequent handling and fingering with both hands "was not supported by any medical opinion." *Id.* While it is true that no medical opinion indicated specifically that Plaintiff could frequently handle and finger with both hands, the Second Circuit has held that where "'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' ... a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 8 (2d Cir. 2017) (internal quotation and other citation

omitted).  The ALJ discussed the prior administrative medical finding by Dr. Waldman, which found no manipulative limitations, and concluded that the evidence supported greater restrictions. *See* Tr. at 19, 104.  The ALJ also discussed the October 2018 consultative examination from Dr. Ganesh, who did not observe or assess specific manipulative limitations.  *See id.* at 18, 470.  The ALJ found both opinions only partially persuasive and explained that he assessed greater manipulative limitations based on later-submitted evidence and Plaintiff's testimony.  *See id.* at 18-19.  "There is nothing improper about an ALJ considering medical opinion evidence that assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, such as a claimant's subjective testimony, to nevertheless choose to assign certain limitations that result in a more restrictive RFC finding." *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) (citing *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013)).

Plaintiff's testimony, in particular, tends to support the ALJ's conclusion.  Plaintiff testified that he was able to perform tasks of daily living such as dressing himself, cleaning, driving, and shopping, and made a similar report to Dr. Ganesh.  *See* Tr. at 44-45, 469.  Plaintiff also noted that sewing was a hobby of his, and that he sewed patches on coats and fixed pockets on pants by hand, though he stated he could only do so for a few minutes before his hands became sore.  *See id.* at 48-49.  As such, it was reasonable for the ALJ to find that Plaintiff was not more limited in light of these activities, all of which involved the use of the hands and/or fingers.  *See id.* at 18-19.

Additionally, the record demonstrates that Plaintiff is right-hand dominant.  *See id.* at 562. While Plaintiff concedes that the evidence shows significant improvement in his right hand after steroid injections, he argues that "the same is not true" regarding his left hand.  *See* Dkt. No. 12 at

17.  Plaintiff discusses evidence showing the thirty-degree joint contracture in his left ring finger due to Dupuytren's contracture and notes his planned surgery.  *See id.* at 17-18.  Plaintiff fails, however, to explain why this alone demonstrates that a restriction to frequent handling and fingering with both hands is insufficient.  *See id.* at 18.  The ALJ is not required to discuss every piece of evidence submitted, and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Brault*, 683 F.3d at 448.  As such, Plaintiff does not carry his burden to demonstrate that greater limitations are warranted simply by pointing to one piece of evidence the ALJ did not expressly discuss.  *See Smith*, 740 Fed. Appx. at 726.  Regardless, the ALJ recognized the presence of Plaintiff's Dupuytren's contracture in his non-dominant left hand, and therefore allowed for some limitation in the use of both hands.  Plaintiff has not shown why this was insufficient when, by his own admission, he was able to use his hands for a variety of household tasks as well as hobbies such as sewing.  *See* Tr. at 16, 44-47, 468, 470, 563.

While Plaintiff makes much of the fact that there is no opinion evidence that matches the manipulative limitations in the RFC, none of the opinion evidence supports greater limitations than the RFC assessed.  *See Bilecki v. Comm'r of Soc. Sec.*, No. 15-cv-1045, 2016 WL 6208538, *9 (N.D.N.Y. Oct. 24, 2016) ("Any limitations in the ALJ's RFC finding that were *additional or greater* than the limitations identified by the medical opinions would not prejudice Plaintiff and therefore do not require remand") (emphasis in original).  Plaintiff has not challenged the ALJ's reliance on his testimony in assessing the manipulative limitations and has not pointed to any other evidence directly undermining the ALJ's assessment.  *See Reynolds v. Colvin*, 570 Fed. Appx. 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears

the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits").

In sum, the ALJ properly considered and addressed the evidence pertaining to each of Plaintiff's impairments, and adequately explained the basis for the limitations assessed. Since the Commissioner's decision is supported by substantial evidence, Plaintiff's complaint must be dismissed.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 18, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

21